## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYANT K. WHITNEY,** | : | |
| *Petitioner* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **LONNIE OLIVER,** *et al.*,[1] | : | |
| *Respondents* | : | **No. 20-3855** |

### MEMORANDUM

PRATTER, J.                                         APRIL  11th , 2022

Mr. Whitney raises five grounds for habeas relief in his federal habeas petition. One of the claims is untimely and, even if considered on its merits, does not state a ground for relief. The other four, all ineffective-assistance-of-counsel claims, were denied by the state courts. Because the state courts' resolutions of these claims were not "contrary to" or an "unreasonable application of" clearly established federal law, the claims are not grounds for habeas relief. After a detailed review, the Court adopts the Magistrate Judge's Report and Recommendation and denies Mr. Whitney's habeas petition in full.

### BACKGROUND

#### I.    Factual Background

The Court draws from the opinion of the Pennsylvania Superior Court, which included the unpublished opinion from the Court of Common Pleas, both opinions having addressed Mr.

---

[1] Mr. Whitney is incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI Albion"), and he properly named Michael Clark, who was the superintendent of SCI Albion, as the respondent in this case. Since that filing, Lonnie Oliver has replaced Mr. Clark as the superintendent of SCI Albion. *SCI Albion*, Department of Corrections, https://www.cor.pa.gov/Facilities/StatePrisons/Pages/Albion.aspx (last visited Apr. 11, 2022). Therefore, the Court substituted Ms. Oliver as the correct respondent in this case. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody.").

Whitney's PCRA petition. *Commwealth v. Whitney*, No. 1948 EDA 2017, 2019 WL 1968111 (Pa.

Super. Ct. May 1, 2019) (incorporating *Commwealth v. Whitney*, CP-51-CR-0014495-2008 (Pa.

Ct. Com. Pl. Aug. 20, 2018)).[2]

Mr. Whitney was "initially arrested because of events that reportedly occurred on June 16,

2008 [at] about 7:00 p.m., when [Mr. Whitney], along with two other unnamed cohorts settled an

illegal drug business dispute with the victim, Robert Jackson, by rapidly firing a [rain] of bullets

at him in a crowded daylight parking lot." *Whitney I*, at 2. This took place at the "Fresh Grocer

shopping center located at 54th and Chester Avenues in Philadelphia as the victim attempted to

enter his previously parked vehicle after shopping in the grocery store." *Id.* The "intended target

and victim, Robert Jackson" was "shot fourteen times in various parts of his torso and groin . . .

render[ing him] permanently paralyzed from the waist downward." *Id.* Mr. Jackson survived this

"attempted execution" because of the "quick concentrated efforts of the responding police

officers" and the medical care they provided to Mr. Jackson. *Id.* The incident was captured on

video and "vividly displayed for the convicting jury[ ] the fearful flight of multiple innocent

bystanders in this residential Philadelphia neighborhood who had been endangered by [Mr.

Whitney's] . . . actions." *Id.*

Mr. Whitney did not immediately cooperate with law enforcement after the shooting. *Id.*

He began to cooperate, however, after Mr. Jackson's "brother was shot and killed and [Mr.

Whitney's] brother was charged with that homicide." *Id.* "On August 28, 2008, [Mr. Jackson]

identified [Mr. Whitney] without hesitation as one of the men who repeatedly shot him from a

---

[2] When citing to the Court of Common Pleas's unpublished August 20, 2018 opinion, the Court will use the internal pagination of that opinion, which is preserved in the Pennsylvania Superior Court's opinion. While Magistrate Judge Lloret referred to the Court of Common Pleas's opinion as "*Whitney II*", this Court will refer to that opinion as *Whitney I* because the Court of Common Pleas's opinion preceded in time that of the Pennsylvania Superior Court. The Court will refer to the Pennsylvania Superior Court's subsequent PCRA opinion as "*Whitney II*".

group of photographs displayed by an investigating detective." *Id.* at 2–3. In addition, Mr. Jackson "positively identified [Mr. Whitney] at the subsequent preliminary hearing" and again at the first trial. *Id.* at 3.

## II.   Procedural Background

Mr. Whitney's petition has a protracted procedural provenance stretching back more than a decade. It includes two trials and multiple appeals.

### A.   Mr. Whitney's First (Mis)Trial and Appeal

Mr. Whitney's first jury trial began in January 2010 "on charges of attempted murder, aggravated assault, criminal conspiracy, weapons offenses, and related charges." *Whitney v. Pennsylvania*, No. 12-cv-6241, 2014 WL 1041405, at *1 (E.D. Pa. Mar. 18, 2014) (approving and adopting report and recommendation). However, the trial court declared a mistrial on the second day of trial after "a police detective revealed information on cross-examination that was not previously known to the defense counsel or prosecutor." *Id.* Mr. Whitney then filed a motion to preclude any retrial, claiming that such prosecutorial misconduct meant that a retrial would violate double jeopardy. *Id.* The trial court denied this motion, determining that the prosecutor had *not* committed any misconduct. *Id.* Mr. Whitney appealed this decision; the Pennsylvania Superior Court affirmed the trial court. *Commonwealth v. Whitney*, 46 A.3d 828 (Pa. Super. Ct. 2012) (Table).

### B.   Mr. Whitney's First Federal Habeas Petition

After the Pennsylvania Supreme Court denied review of Mr. Whitney's appeal, he filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2241. Finding no prosecutorial misconduct, this Court dismissed Mr. Whitney's double jeopardy claim with prejudice and dismissed his other claims without prejudice for failure to exhaust them in state court. *Whitney*, 2014 WL 1041405, at *1, 5.

3

C.  Mr. Whitney's Second Trial

Mr. Whitney's second jury trial began in March 2014. *Whitney I*, at 3. On March 27, 2014,

the jury found him guilty of attempted murder, aggravated assault, criminal conspiracy, possession

of a firearm by a prohibited person, possession of a firearm without a license, possession of a

firearm on public streets or public property in Philadelphia, and possession of an instrument of

crime. *Id.* at 4–5. On May 29, 2014, the trial court sentenced him to a total of between 33 and 67

years of confinement.[3] *Id.* at 5.

Mr. Whitney then filed a motion for reconsideration of his sentence, which the trial court

denied. Dkt. No. CP-51-CR-0014495-2008, at 21.

D.  Mr. Whitney's Direct Appeal

In October 2014, Mr. Whitney appealed the denial of his motion for reconsideration of his

sentence on the basis that his sentence was illegal under both Pennsylvania law and the United

States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Mr. Whitney

argued that the jury did not specifically find that he inflicted serious bodily injury on the victim

for the attempted murder conviction and the sentencing court, therefore, wrongly sentenced him

to more than 20 years in prison. *See* 18 Pa. Cons. Stat. § 1102(c) (imposing a maximum penalty

of 20 years where no serious bodily injury resulted).

The Court of Common Pleas issued an opinion denying Mr. Whitney's claim, finding that

any *Apprendi* error was harmless because "the jury was presented with ample evidence to

determine that Whitney inflicted serious bodily injury upon his victim." *Commonwealth v. Whitney*,

---

[3] The trial court did not sentence Mr. Whitney to any further penalty for the aggravated assault charge. *Whitney I*, at 4. This is almost certainly because the aggravated assault charge, arising out of the same shooting of Mr. Jackson, was a lesser included offense of the attempted murder charge. *See, e.g., Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 231 (3d Cir. 2017).

No. 1948 EDA 2014, 2015 WL 7093380, at *2 (Pa. Super. Ct. Nov. 13, 2015) (citing *Commwealth v. Whitney*, No. CP-51-CR-0014495-2008 (Pa. Ct. Comm. Pl. Feb. 6, 2015)).

The Superior Court affirmed the judgment of sentence, stating that the jury found that Mr. Whitney inflicted serious bodily injury on the victim when it found him guilty of aggravated assault, which included "[Mr. Jackson's] fourteen gunshot wounds; his severed spine; [and] the paralysis." *Id.* Furthermore, the Superior Court found that the trial court had fashioned the jury instructions "so that the jury could *only* convict Whitney of aggravated assault if they found beyond a reasonable doubt that he intentionally *caused* serious bodily injury to his victim." *Id.*

The Pennsylvania Supreme Court denied Mr. Whitney's petition for allowance of appeal on March 30, 2016. Dkt. No. 678 EAL 2015, at 3.[4]

### E.  Mr. Whitney's PCRA Petition

Mr. Whitney, through counsel, then filed a petition under Pennsylvania's Post-Conviction Relief Act (PCRA). Dkt. No. CP-51-CR-0014495-2008, at 23. In April 2017, the Court of Common Pleas issued a notice that Mr. Whitney's PCRA petition would be denied/dismissed within 20 days pursuant to Pennsylvania Rule of Criminal Procedure 907 because the court determined his PCRA petition was without merit. *Id.* at 24. The Court of Common Pleas subsequently issued that order dismissing Mr. Whitney's petition. *Id.* Mr. Whitney, through counsel, promptly appealed. *Id.*

In August 2018, the Court of Common Pleas filed an opinion supporting its dismissal.[5] *See Whitney I.* The Court of Common Pleas addressed Mr. Whitney's four ineffective-assistance-of-

---

[4] The Court of Common Pleas's docket states that the Pennsylvania Supreme Court issued this order on April 30, 2016. Dkt. No. CP-51-CR-0014495-2008, at 23. The order of the Pennsylvania Supreme Court and the docket entry from the Pennsylvania Supreme Court, however, both state March 30, 2016. Dkt. No. 678 EAL 2015, at 3.

[5] Such opinions are issued when a PCRA court summarily dismisses a PCRA petition and must support its summary dismissal after the petitioner files an appeal. 210 Pa. Code §1925(a)(1).

counsel claims: (1) failing to object to a police officer's description of his job assignment; (2) failing to request a jury instruction regarding Mr. Jackson's prior criminal record; (3) failing to move to exclude evidence that the shooting involved a drug dispute; and (4) failing to challenge Mr. Whitney's sentence as unreasonable and violative of double jeopardy under the Pennsylvania constitution. *Whitney I*, at 9, 10, 12, 16, 23. The Court of Common Pleas denied all four of Mr. Whitney's ineffective-assistance-of-counsel claims. *Id.* at 25. In the alternative, the Court of Common Pleas found that Mr. Whitney had waived two of these claims. *Id.* at 10, 12.

On appeal, the Pennsylvania Superior Court denied Mr. Whitney's PCRA petition. *Whitney II*, 2019 WL 1968111, at *1–2. The Superior Court adopted the Court of Common Pleas's opinion in full, except that it disagreed with the suggestion that Mr. Whitney may have waived some of his ineffective-assistance-of-counsel claims by not raising them on direct appeal. *Id.* at *1 n.1.

The Pennsylvania Supreme Court denied Mr. Whitney's petition for allowance of appeal on October 15, 2019. Dkt. No. 260 EAL 2019, at 3.

### F.  Mr. Whitney's Second (and Present) Federal Habeas Petition

Having thus exhausted both the *direct* appeal process and the *collateral* appeal process in the state courts, Mr. Whitney again sought a writ of habeas corpus in federal court. He filed his first petition *pro se* on July 24, 2020.[6] On August 14, 2020, Mr. Whitney, this time through counsel, filed a motion to amend his petition. The Court granted this request on August 28, 2020, giving

---

[6] According to Mr. Whitney's *pro se* petition, it was filed on July 24, 2020. Doc. No. 1, at 19. Pursuant to the prison mailbox rule, a *pro se* prisoner's habeas petition is deemed filed when he delivers it to prison officials for filing with the court. *Houston v. Lack*, 487 U.S. 266, 276 (1988). The Court assumes that Mr. Whitney delivered his petition to prison officials for filing on July 24, 2020, and deems his petition filed on that date.

Mr. Whitney 90 days from the date of that Order to amend his petition.[7] Mr. Whitney filed his amended petition on December 7, 2020.

The Court referred this matter to United States Magistrate Judge Richard A. Lloret for a report and recommendation. Judge Lloret issued his R&R on June 22, 2021. Mr. Whitney timely objected to Judge Lloret's R&R. The respondents, through the Attorney General of Pennsylvania, replied to Mr. Whitney's objections.

## LEGAL STANDARD

Federal courts can hear habeas petitions from state prisoners, but only in limited circumstances. The prisoner must first have "exhausted the remedies available in" state court, usually through a direct appeal and then a post-conviction petition. 28 U.S.C. § 2254(b)(1)(A).

Assuming that a state prisoner has met the exhaustion requirement, a federal district court "shall not" grant a petition "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has made clear that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning. *Williams v. Taylor*, 529 U.S. 362, 404–08 (2000). "A state court decision is 'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court.'" *Eley v.*

---

[7] Ninety days from August 28, 2020 was Thursday November 26, 2020. Because this was Thanksgiving Day, Mr. Whitney had until November 27, 2020 to file an amended petition. Fed. R. Civ. P. 6(a)(1)(C).

*Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (alteration in original) (quoting *Williams*, 529 U.S. at 405–06). On the other hand, "a state court decision reflects an 'unreasonable application of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet.'" *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017) (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

If a party timely objects to a magistrate judge's report and recommendation, the court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Regardless of whether timely objections are made, district courts *may* accept, reject, or modify—in whole or in part—the magistrate judge's findings or recommendations. *Id.*

## DISCUSSION

In his initial *pro se* petition for a writ of habeas corpus, Mr. Whitney raised the same four ineffective-assistance-of-counsel claims that he raised in the state courts.[8] *See* Doc. No. 1, at 2–12. In his amended petition, with the assistance of counsel, Mr. Whitney recited the same four properly exhausted ineffective-assistance-of-counsel claims and also added a claim for a Sixth Amendment violation, arguing that the trial court failed to try every element of Mr. Whitney's attempted murder charge to the jury.[9] Doc. No. 8, at 6–20.

---

[8] In his initial *pro se* petition, grounds three and four both address the same claim. Mr. Whitney asserts that, at his second trial, his counsel failed to object to the introduction of evidence that the motive for the second shooting was an ongoing narcotics distribution dispute. Doc. No. 1, at 8, 10–11. Mr. Whitney contends that his counsel should have objected based on the "law of the case" doctrine. *Id.* at 8. While styled as two independent claims, they are one and the same. Thus, "Ground 5" in Mr. Whitney's *pro se* petition is actually his fourth ineffective-assistance-of-counsel claim. Doc. No. 1, at 13. This also is the same ineffective-assistance-of-counsel claim that he raised and exhausted in his PCRA petition. *See Whitney II*, 2019 WL 1968111, at *2; *Whitney I*, at 12.

[9] In his first *pro se* petition, Mr. Whitney also raised four *additional* ineffective-assistance-of-counsel claims. Doc. No. 1, at 13–15. Mr. Whitney concedes that these claims have not been exhausted. *Id.* at 15. He then dropped these claims in his amended petition. These claims are not properly before the Court and the Court will not address them. 28 U.S.C. §§ 2244(d)(1), 2254(b)(1).

Magistrate Judge Lloret recommended that all of Mr. Whitney's claims should be dismissed with prejudice. Mr. Whitney timely objected to Judge Lloret's R&R in all respects. The respondents filed a reply, arguing that the Court should overrule Mr. Whitney's objections and adopt Judge Lloret's R&R in full. Because Mr. Whitney timely objected to Judge Lloret's R&R, the court reviews it *de novo*. 28 U.S.C. § 636(b)(1). For the reasons that follow, the Court adopts Judge Lloret's R&R in all substantive respects, departing only slightly from his reasoning as to Mr. Whitney's Sixth Amendment claim.

## I.   Mr. Whitney's Sixth Amendment Claim Is Untimely and Meritless

Mr. Whitney claims that his mandatory minimum sentence violated his Sixth Amendment right to a jury trial on every element of a crime under the Supreme Court's decision in *Apprendi*, 530 U.S. 466. Doc. No. 8, at 6–20. He argues that the trial court incorrectly imposed a sentencing enhancement on the attempted murder charge for causing serious bodily injury. *Id.* at 8. Mr. Whitney concedes that the jury was instructed on serious bodily injury as to the charge for aggravated assault—and found him guilty—but argues that the jury did *not* find beyond a reasonable doubt that the serious bodily injury was the result of the attempted murder.[10] *Id.* This is because the trial judge gave the jury an interrogatory about serious bodily injury for the aggravated assault charge but did not give the jury the same serious bodily injury interrogatory for the attempted murder charge. *Id.*; Mar. 27, 2014 Trial Tr. at 33:8–34:16.

Judge Lloret agreed with the respondents' argument, recommending that the Court find this claim to be untimely but explaining that, if the Court reached the merits of this claim, it should be denied as harmless error. Doc. No. 16, at 9–13. Mr. Whitney timely filed objections to Judge

---

[10] The trial judge instructed the jury about the definition of "serious bodily injury." Mar. 27, 2014 Trial Tr. at 20:23–22:1. The definition of "serious bodily injury" given at trial is the same as the definition of "serious bodily injury" for the sentencing enhancement for attempted murder resulting in serious bodily injury. 18 Pa. Cons. Stat. §§ 1102, 2301.

Lloret's report on this issue. Doc. No. 18, at 1–12. He argued that the Court should find the one-year timely filing requirement under AEDPA to be equitably tolled. *Id.* at 3–12. The respondents replied and disagreed. Doc. No. 23, at 2–3.

The Court agrees with Judge Lloret's conclusion but disagrees slightly with his reasoning. Thus, the Court adopts his R&R in part as to this issue.

### A. Mr. Whitney's *Apprendi* Claim Does Not Relate Back to His First Petition and Is Untimely

A state prisoner must file a habeas petition within one year of "the date on which the judgment became final." 28 U.S.C. § 2244(d)(1)(A). That one-year period is tolled while a prisoner pursues state post-conviction or other collateral review. *Id.* § 2244(d)(2). Nevertheless, a prisoner's petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions. *Id.* § 2242. Under Federal Rule of Civil Procedure 15(c)(1)(B), a party may raise a time-barred claim if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

Interpreting this situation in the context of habeas proceedings, the Supreme Court stated that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). The Supreme Court rejected that the same "conduct, transaction, or occurrence" language of Federal Rule of Civil Procedure 15 meant the same "trial, conviction, or sentence" for purposes of relation back in the habeas context. *Id.* That means that "[a]n amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. The Third Circuit Court of Appeals has clarified that a court's analysis of this issue is to be done on a claim-by-claim basis, meaning one

claim may be untimely because it does *not* relate back while another claim in the same amended pleading may be timely because it *does* relate back. *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004).

Mr. Whitney filed a timely PCRA petition in Pennsylvania state court within one year of the judgment of his conviction becoming final. Dkt. No. CP-51-CR-0014495-2008 at 23; 42 Pa. Cons. Stat. § 9545(b). This tolled the one-year period for filing a federal habeas petition. 28 U.S.C. § 2244(d)(2). Mr. Whitney's PCRA petition remained pending until the Pennsylvania Supreme Court denied his petition for allowance of appeal on October 15, 2019. Dkt. No. 260 EAL 2019, at 3. Mr. Whitney then filed his original uncounseled habeas petition on July 24, 2020, within the one-year period for federal habeas petitions. Doc. No. 1. He did not raise any Sixth Amendment claim under *Apprendi* in this first habeas petition. *See id.*

On August 28, 2020, approximately two months before the one-year period for a federal habeas petition expired, the Court granted Mr. Whitney's motion to amend his petition. Doc. No. 5. The Court fixed 90 days for this amendment, *id.*, making the amendment due on November 27, 2020, after the one-year period to file a federal habeas petition expired. Mr. Whitney's counsel filed the amended petition (late) on December 7, 2020. Doc. No. 8.

Judge Lloret recommended denying Mr. Whitney's Sixth Amendment claim under *Apprendi* as being time-barred because it did not relate back to his original habeas petition. Judge Lloret found that Mr. Whitney's new claim was similar in *time* but not similar in *type* to his ineffective-assistance-of-counsel claim. Doc. No. 16, at 11–12. Mr. Whitney argues that because Judge Lloret conceded that his Sixth Amendment claim was similar in *time* to his ineffective assistance claim, the Supreme Court's opinion in *Mayle* did not apply. Doc. No. 18, at 2. This is because the Supreme Court in *Mayle* stated that "[a]n amended habeas petition . . . does not relate

11

back . . . when it asserts a new ground for relief supported by facts that differ in *both time and type* from those the original pleading set forth." *Mayle,* 545 U.S. at 650 (emphasis added). In other words Mr. Whitney asserts that both time and type are necessary; neither alone is sufficient. Hence, he challenges Judge Lloret's conclusion.

Mr. Whitney appears to be right in principle. *See, e.g., Ross v. Williams,* 950 F.3d 1160, 1171 (9th Cir. 2020) (en banc) ("[R]elation back requires a single course or pattern of conduct— not factually and temporally unrelated conduct arising out of the same underlying proceeding."); *Hodge v. United States,* 554 F.3d 372, 378 (3d Cir. 2009) (explaining that a new claim "differ[ed] in neither type nor time"). Thus, to the extent that Judge Lloret viewed these as independent bases for denying that a claim relates back in the habeas context, this Court does not adopt that portion of his R&R.

Nonetheless, Mr. Whitney is wrong about the application of *Mayle* to his particular petition. Mr. Whitney's Sixth Amendment *Apprendi* claim does not relate back to his fourth ineffective-assistance-of-counsel claim (Ground 5 in his original petition). Doc. No. 16, at 11. In that ineffective assistance claim, Mr. Whitney argues that his counsel was ineffective for failing to seek reconsideration of his sentence as unreasonable and/or in violation of the Pennsylvania constitution's double jeopardy clause. Doc. No. 1, at 13. The Third Circuit Court of Appeals previously considered a case with facts nearly identical to those here. In *Wilkerson v. Superintendent Fayette SCI,* the Third Circuit considered a habeas petition in which the prisoner had properly raised a double jeopardy claim for the Pennsylvania trial court's failure to merge his aggravated assault and attempted murder sentences arising out of the same criminal act and later added an *Apprendi* claim (and an ineffective-assistance-of-counsel claim related to it) after the one-year period to file a federal habeas petition had expired. 871 F.3d 221, 226 (3d Cir. 2017). In

denying that the *Apprendi* claim related back to the petitioner's double jeopardy claim, the Third Circuit explained that "two claims merely arising from the same 'conviction or sentence' cannot be enough to satisfy the relation back standard" and that relying on the jury instructions, verdict, and the sentence as the common core of operative facts "define[d] the 'same conduct, transaction, or occurrence' necessary for relation back at 'too high a level of generality.'" *Id.* at 237 (quoting *Mayle*, 545 U.S. at 657, 661).

So, too, here. Mr. Whitney's ineffective-assistance-of-counsel claim is that his counsel failed to seek *reconsideration* of his sentence after it was imposed, while Mr. Whitney's Sixth Amendment *Apprendi* claim is that the trial judge, during the course of the trial, allegedly erred by refusing to include a separate interrogatory on the issue of serious bodily injury with respect to the attempted murder charged *in addition to* the interrogatory of serious bodily injury with respect to the aggravated assault charge. While Mr. Whitney's claims are undoubtedly related in a general sense, these "are distinct claims with their own factual predicates that happen to involve" his sentence. *Wilkerson*, 871 F.3d at 238. This is "too high a level of generality" *Mayle*, 545 U.S. at 661. These claims are different in both time and type. *Id.* at 650. Therefore, the Court finds that Mr. Whitney's claims do not relate back to his original petition for habeas corpus, are untimely, and are thus barred by AEDPA's one-year statute of limitations.

In his objections to Judge Lloret's R&R, Mr. Whitney argues that the Court should equitably toll the one-year period to file his federal habeas petition so that his amended petition (falling outside the one-year period and outside the Court's 90-day deadline) will be considered on its merits. Doc. No. 18, at 3–12. The Court does not need to reach this issue, however, because Mr. Whitney's Sixth Amendment *Apprendi* claim is meritless.

Therefore, the Court agrees with Judge Lloret's conclusion that Mr. Whitney's Sixth Amendment claim under *Apprendi* is untimely and adopts his R&R in part.

> B. Even if the Court Reached the Merits of Mr. Whitney's *Apprendi* Claim, it Would Still Fail

Even if the Court were to reach the merits of Mr. Whitney's *Apprendi* claim, it still plainly fails. "[A]n instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States,* 527 U.S. 1, 9 (1999) (emphasis omitted). If there was an *Apprendi* error, "the question remains whether [Mr. Whitney's] conviction can stand because the error was harmless." *Id.* at 15. "In a collateral proceeding, the standard for harmlessness is 'whether the error had substantial and injurious effect or influence in determining the jury's verdict.'" *Bronshtein v. Horn,* 404 F.3d 700, 712 (3d Cir. 2005) (quoting *Smith v. Horn,* 120 F.3d 400, 417 (3d Cir. 1997)).

Here, any potential *Apprendi* error by the state trial judge in not providing the jury with a separate interrogatory about serious bodily injury for Mr. Whitney's attempted murder charge in addition to the identical interrogatory for the aggravated assault charge was harmless. Mr. Whitney did not challenge the severity of Mr. Jackson's injuries. At trial, the parties stipulated to the introduction of Mr. Jackson's medical records. Mar. 26, 2014 Trial Tr. at 99:2–17. These medical records were admitted as evidence and explained to the jury. The prosecutor explained that "Mr. Jackson was admitted [to the Hospital of the University of Pennsylvania] on June 16, 2008, for multiple gunshot wounds to the torso and back[,] that Mr. Jackson received numerous surgeries as a result of those gunshot wounds[,] and that Mr. Jackson is now paralyzed as a result of a bullet lodging in his vertebra." *Id.* at 108:19–25. In his closing argument, defense counsel acknowledged that "Robert Jackson suffered a horrible injury." *Id.* at 115:10–11. The evidence of Mr. Jackson's serious bodily injury was overwhelming, and the jury agreed.

Thus, "the evidence was sufficiently conclusive to support the sentence actually imposed." *United States v. Vazquez*, 271 F.3d 93, 101 (3d Cir. 2001) (en banc); *see also United States v. Barbosa*, 271 F.3d 438, 459–61 (3d Cir. 2001) (finding *Apprendi* error with respect to drug identity was harmless where evidence was overwhelming). In a case with nearly identical facts, where a Pennsylvania trial judge instructed the jury about serious bodily injury for an aggravated assault charge but not the attempted murder charge, the Third Circuit explained that, were it to reach the merits of the claim, it would fail because the parties stipulated to the introduction of the victim's medical records and it was "a near certainty that [the defendant] would have received the identical sentence had the jury been given the proper instruction." *Wilkerson*, 871 F.3d at 238 n.17.

Therefore, the Court denies Mr. Whitney's Sixth Amendment claim as both untimely and meritless.

## II.    Mr. Whitney's Ineffective-Assistance-of-Counsel Claims Are Also Meritless

Mr. Whitney also raises four ineffective-assistance-of-counsel claims, all of which he properly exhausted in the state courts. In his R&R, Judge Lloret recommended denying all four as meritless. Doc. No. 16, at 13–19. Mr. Whitney objected to Judge Lloret's recommendation as to all four. Doc. No. 18, at 12–17. The respondents replied and urged the Court to overrule Mr. Whitney's objections. Doc. No. 23, at 3–6. For the reasons that follow, the Court adopts Judge Lloret's R&R as to Mr. Whitney's four ineffective-assistance-of-counsel claims in full.

To succeed on an ineffective-assistance-of-counsel claim, a petitioner must demonstrate *both* that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show his counsel's performance was deficient, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* This means that counsel must provide "reasonably effective assistance" as defined "under

15

prevailing professional norms." *Id.* at 687, 688. Assuming a petitioner demonstrates that his counsel's performance was deficient, he must also show that he was prejudiced, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Where a state court addressed a petitioner's claims that his counsel was ineffective and the state court applied the correct legal standard, a petitioner must show that the state court decision "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). A federal court is not to substitute its own judgment for that of the state court. *Id.* In other words, a review of ineffectiveness claims in a habeas petition is "doubly deferential" because the reviewing federal court must give "the benefit of the doubt" to *both* the state court *and* the petitioner's counsel. *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *accord Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014).

A.  The State Courts Correctly Concluded that Mr. Whitney's Counsel Was Not Ineffective in Advocating his Excessive Sentence Claim

Mr. Whitney first argues that both his counsel at sentencing and his counsel on direct appeal were ineffective for failing to object to Mr. Whitney's sentence as being unreasonable and violative of the Pennsylvania state constitution's double jeopardy clause. Doc. No. 8, at 20–22. Mr. Whitney argues that his counsel should have raised a claim that his sentence was unreasonable because it contained multiple sentences for a singular act of carrying or using a weapon. Doc. No. 8, at 20. He argues that a concurrence by then Chief Judge Castille in *Commwealth v. Baldwin*, 985 A.2d 830 (Pa. 2009), suggested his sentence was unreasonable and his counsel was ineffective both for not being aware of that concurrence and failing to use it to seek reconsideration. Doc. No. 8, at 21.

Judge Lloret recommended denying this claim because the state courts reasonably resolved this claim. Doc. No. 16, at 13–14. This Court agrees and adopts Judge Lloret's R&R on this issue.

As Judge Lloret explained, the Court of Common Pleas considered this very claim as part of Mr. Whitney's initial PCRA petition. *Whitney I*, at 16–17. The court explained that Mr. Whitney's double jeopardy claim was meritless because "each of the offenses were defined differently, the respective sentences did not merge[,] and therefore 'double jeopardy' protection did not apply." *Id.* The court also explained that Mr. Whitney's counsel had raised this very claim and, even if he had not, he would not have been ineffective "for failing to anticipate future-possibly never occurring-developments in the law." *Id.* at 17. As such, the court denied this claim, finding that Mr. Whitney's counsel's performance was not defective. *Id.* The Superior Court adopted the Court of Common Pleas's decision and reasoning. *Whitney II*, 2019 WL 1968111, at *1.

While Chief Judge Castille's concurrence may, at some time in the future, garner a majority, Mr. Whitney's counsel did not provide ineffective assistance by not raising an objection based on that concurrence. As numerous courts have explained, "there is no general duty on the part of defense counsel to anticipate changes in the law." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (internal quotation marks omitted). "Only in a rare case would it be ineffective assistance by a trial attorney not to make an objection that would be overruled under prevailing law." *Id.* (internal quotation marks omitted). Thus, the Court of Common Pleas's opinion, which the Pennsylvania Superior Court adopted in full, did not "involve[] an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As such, Mr. Whitney's claim about his trial counsel and his claim about his appellate counsel on this issue both fail.

The Court adopts Judge Lloret's R&R on this issue and denies this claim.

B.  The State Courts Correctly Concluded that Mr. Whitney's Counsel Was Not
    Ineffective for Failing to Exclude a Detective's Trial Testimony

Next, Mr. Whitney argues that his trial counsel's performance was ineffective for failing

to move to preclude testimony from Detective Smith, "who explained to the jury that his fugitive

squad was given the task of targeting 'violent criminals' with open arrest warrants." Doc. No. 8,

at 22. Mr. Whitney claims that his counsel should have objected to Detective Smith's testimony

that he was part of task force targeting violent criminals because it was prior bad act evidence. *Id.*

at 23.

Judge Lloret recommended denying this claim because the state courts reasonably resolved

this claim. Doc. No. 16, at 14–16. This Court agrees and adopts Judge Lloret's R&R on this issue.

As Judge Lloret detailed, the Court of Common Pleas considered this very claim as part of

Mr. Whitney's initial PCRA petition. The Court of Common Pleas explained that Detective

Smith's testimony "demonstrated that no objectionable, let alone inadmissible or prejudicial, 'bad

character' evidence had been . . . introduced a trial." *Whitney I,* at 8. The court explained that "trial

counsel could not be faulted for raising a meritless objection." *Id.* In addition, the court found that

Detective Smith's description of his job was a reasonable description of his duties, did not malign

Mr. Whitney's character, and that Mr. Whitney failed to demonstrate that Detective Smith's

testimony prejudiced his case. *Id.* at 9. The Philadelphia Superior Court adopted the Court of

Common Pleas's opinion. *Whitney II,* 2019 WL 1968111, at *1.

At this stage, where this Court is "doubly deferential," Mr. Whitney has not shown that the

state court's decision denying his ineffective assistance claim resulted in a decision that was either

"contrary to" or that "involved an unreasonable application of[] clearly established Federal law, as

determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The Court of Common Pleas, as

adopted by the Pennsylvania Superior Court, explained that Mr. Whitney's counsel's performance

was not deficient for failing to raise a meritless objection. *Whitney I*, at 8. While the court did not explicitly invoke *Strickland*, its unmistakable reasoning in application was correct. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

Mr. Whitney also seems to be arguing that the trial court committed errors of state law by admitting this testimony. Doc. No. 8, at 23. This, however, does not provide a basis for habeas relief. Even if the state court opinions involved an error of state law, which they did not,[11] "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Therefore, the Court adopts Judge Lloret's R&R on this issue and denies this claim.

C. The State Courts Correctly Concluded that Mr. Whitney's Counsel Was Not Ineffective for Failing to Request a Jury Instruction About Mr. Jackson's Probation Status

Third, Mr. Whitney argues that his counsel was ineffective for failing to request a jury instruction that Mr. Jackson was on probation at the time he was shot by Mr. Whitney. Doc. No. 8, at 25. Mr. Whitney argues that had his counsel requested this instruction, the trial court would have been instructed the jury that it was *required* to consider Mr. Jackson's probation status when assessing his credibility. *Id.* at 25.

Judge Lloret recommended denying this claim because the state courts reasonably resolved this claim. Doc. No. 16, at 16–17. This Court agrees and adopts Judge Lloret's R&R on this issue.

As Judge Lloret detailed, the Court of Common Pleas considered this very claim as part of Mr. Whitney's initial PCRA petition. The Court of Common Pleas explained that even without

---

[11] Mr. Whitney relies on *Commonwealth v. Boczkowski* for the proposition that "evidence of prior bad acts is inadmissible to show bad character or criminal propensity." 846 A.2d 75, 85–86 (Pa. 2004). True enough. Detective Smith's testimony that he was on a task force targeting violent criminals, however, said *nothing* about any prior act of any person whatsoever, let alone any prior bad act committed by Mr. Whitney.

this jury instruction, Mr. Whitney's counsel "exposed every aspect of [Mr. Jackson's] criminal history well beyond what would normally have been deemed admissible." *Whitney I*, at 10. Indeed, "[t]here [was] no reason for any request for a special instruction that singularly highlighted one undisputed aspect of [Mr. Jackson's] character." *Id.* at 11. For the "jury was duly informed . . . within the myriad of final instructions that it was entirely within their province to consider all [] circumstances relevant to evaluating credibility of all witnesses presented." *Id.* at 10–11. Finally, the Court of Common Pleas concluded that Mr. Whitney had not been prejudiced in any way by his counsel's failure to request this instruction. *Id.* The Pennsylvania Superior Court adopted the Court of Common Pleas's opinion. *Whitney*, 2019 WL1968111, at *1.

Like the second claim discussed just above, where this Court is "doubly deferential," Mr. Whitney has not shown that the state courts erred in resolving this ineffective-assistance-of-counsel claim. The state courts determined *both* that Mr. Whitney's counsel's performance was not deficient *and* that his case was not prejudiced by the lack of the credibility jury instruction. The state courts explained the extensive evidence at trial involving Mr. Jackson's criminal record, "including his progress, or lack thereof, under probationary supervision, his testimony during the violations hearing before his supervising judge, and his admitted drug dealing activities." *Whitney I*, at 10. Even assuming that Mr. Whitney's counsel performed deficiently by not requesting this credibility instruction, this Court agrees that Mr. Whitney has not shown that he suffered any prejudice as a result. *See, e.g. Jackson v. Britton*, No. 08-cv-4203, 2010 WL 1337730, at *7–8 (E.D. Pa. Apr. 6, 2010) (finding no prejudice in counsel's failure to request jury instruction about witness's criminal history where "trial counsel zealously attacked [the witness's] credibility during cross examination"); *Hayes v. Lavan*, No. 03-cv-4658, 2004 WL 1490333, at *5–6 (E.D. Pa. June 30, 2004) (denying ineffective-assistance-of-counsel claim where "[r]eview of the court's

instructions to the jury reveals that the court did instruct the jury" on credibility so "counsel cannot be deemed ineffective for failing to request [an even more specific credibility] charge which was not warranted").

Thus, the state courts' denial of Mr. Whitney's ineffective-assistance-of-counsel claim on this issue did not result in a decision that was "contrary to" or that "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). To the extent that Mr. Whitney also seeks to again contest the merits of his claim based on the underlying state law itself, this does not provide any basis for federal habeas relief. *Estelle*, 502 U.S. at 67.

Therefore, the Court adopts Judge Lloret's R&R on this issue and denies Mr. Whitney's third ineffective assistance claim.

D. The State Courts Correctly Concluded that Mr. Whitney's Trial and Appellate Counsel Were Not Ineffective as to Mr. Whitney's Claim Regarding Prior Bad Act Evidence of a Drug Dispute

Fourth and finally, Mr. Whitney argues that his trial counsel was ineffective for failing to seek and secure the exclusion of evidence that Mr. Whitney's shooting of Mr. Jackson related to a drug dispute. Doc. No. 8, at 27. As Mr. Whitney explains, the trial judge in his first trial precluded any mention that Mr. Whitney was allegedly involved with drugs or drug dealing. *Id.* At his second criminal trial, however, the trial judge permitted such evidence. *Id.* Now, Mr. Whitney asserts that his trial counsel's performance was ineffective in failing to secure the exclusion of this evidence and avers that his appellate counsel was, in turn, ineffective for failing to raise this issue on direct appeal. *Id.* at 27–28.

Judge Lloret recommended denying both ineffective-assistance-of-counsel claims because the state courts reasonably resolved this claim. Doc. No. 16, at 17–19. This Court agrees and adopts Judge Lloret's R&R on this issue.

21

At Mr. Whitney's first trial, the prosecutor agreed that the prosecution would not refer to Mr. Whitney's involvement in any criminal conduct other than the crimes he had been charged with. Between Mr. Whitney's first and second trials, Mr. Jackson admitted during a probation violation hearing that he was shot due to a drug dispute with Mr. Whitney. *Whitney I*, at 13–14. At Mr. Whitney's second criminal trial, his trial counsel moved to exclude any mention of drug activity and stated that such testimony was prohibited at the first trial. Mar. 25, 2014 Trial Tr. at 4:15–7:12. The trial judge noted that collateral estoppel did not apply to bar his reconsideration of the first trial judge's ruling because Mr. Jackson's changed testimony at the probation hearing constituted a change of circumstance. *Id.* at 6:1–18; *see also id.* at 10:17–11:13 (noting that Mr. Jackson did not reveal he was the target of the shooting due to a drug dispute until the 2013 probation hearing).

Mr. Whitney argues that his trial counsel was ineffective for failing to argue that the trial judge's reconsideration of the admissibility of this evidence was precluded by Pennsylvania's "law of the case" doctrine. Doc. No. 8, at 27. In addition, Mr. Whitney argues that his trial counsel was ineffective in not moving to limit the evidence to identify just a "dispute" between Mr. Whitney and Mr. Jackson rather than a "*drug* dispute." *Id.* at 28 (emphasis added).

The Court of Common Pleas considered these claims and denied them. As to the "law of the case" claim, the court explained that Mr. Whitney's trial counsel *had* objected to the introduction of this evidence at his second trial and that while his counsel did not use the specific words "law of the case," he argued "basically the same legal concepts as set forth in the PCRA claim." *Whitney I*, at 15. The court explained that the trial judge had "the discretion and ability to independently assess these evidentiary matters in a separate trial four years later particularly in

view of admittedly significant change of circumstances."[12] *Id.* As to Mr. Whitney's claim that his trial counsel should have sought to sanitize the phrase "drug dispute" by seeking to have it called merely a "dispute," the Court of Common Pleas explained that it was meritless because "[t]hat type of request . . . following [the Court of Common Pleas's] detailed instruction and evidentiary ruling would have been dutifully denied by this Court. *Whitney I*, at 15–16. The Pennsylvania Superior Court adopted the Court of Common Pleas's opinion on this issue. *Whitney II*, 2019 WL 1968111, at *1.

Once again, Mr. Whitney has not shown that the state courts' denial of his ineffective-assistance-of-counsel claims involved any decision that was "contrary to" or an "unreasonable application of" clearly established federal law. As to the "law of the case" argument, Mr. Whitney's counsel *did* raise this claim, just not in the precise language he would have preferred. The trial court considered and denied this motion *in limine*. This does not constitute deficient performance under *Strickland* and certainly not under a federal habeas court's deferential review of a state court's determination of attorney effectiveness. *Harrington*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."); *see also Jacobs v. Horn*, 395 F.3d 92, 114 (3d Cir. 2005) (finding counsel's failure to raise a state law objection to a jury instruction did not constitute ineffective assistance). Similarly,

---

[12] Mr. Whitney argues here that the trial judge in his second trial incorrectly relied on Mr. Jackson's brother's murder as a basis to find changed circumstances. Doc. No. 8, at 28 n.1. His contention is that this could not have constituted a changed circumstance between his first and second criminal trials because Mr. Jackson's brother's murder took place before his first trial even began. *Id.* But, as Judge Lloret rightly explained, the trial judge at Mr. Whitney's second trial considered Mr. Jackson's testimony at the *probation hearing* in 2013, in between Mr. Whitney's first and second trial. Mar. 25, 2014 Trial Tr. at 6:1–18; *see also id.* at 10:17–11:13 (noting that Mr. Jackson did not reveal he was the target of the shooting due to a drug dispute until the 2013 probation hearing). Thus, Mr. Whitney's argument regarding the second trial court's ruling as to changed circumstances plainly fails. That the Court of Common Pleas did not fully explain this in its opinion, *see Whitney I*, at 15, does not change this Court's conclusion at this stage.

as to Mr. Whitney's argument that his trial counsel was ineffective for failing to argue that the trial court should further limit "drug dispute" to "dispute," the state courts concluded that any such objection would have been fruitless. *Whitney I*, at 15–16. This conclusion, too, was neither "contrary to" nor an "unreasonable application of" clearly established federal law regarding ineffective assistance claims. [13] *Werts*, 228 F.3d at 203 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

Therefore, the Court adopts Judge Lloret's R&R on this issue and denies Mr. Whitney's fourth ineffective assistance claim as it pertains to his trial counsel.

Mr. Whitney's argument that his appellate counsel was ineffective for failing to raise his argument about "law of the case" on direct appeal also plainly fails. An appellate counsel is not constitutionally ineffective when the underlying claim against his trial counsel is meritless. *Holland v. Horn*, 150 F. Supp. 2d 706, 730 (E.D. Pa. 2001).

Therefore, the Court also adopts Judge Lloret's R&R on this issue and denies Mr. Whitney's fourth ineffective assistance claim as it pertains to his appellate counsel.

## CONCLUSION

Having considered Judge Lloret's report and recommendation and Mr. Whitney's objections to it, the Court adopts Judge Lloret's report and recommendation in part and denies Mr. Whitney's petition for habeas corpus. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[13] To the extent that Mr. Whitney also seeks to challenge the PCRA's court's determination that his trial counsel did not err by failing to raise additional state law grounds related to this claim, any such argument would not change the outcome of his federal habeas petition. As explained above, federal courts cannot "reexamine state court determinations on state-law questions." *Estelle*, 502 U.S. at 68.